

**CLERK'S OFFICE**
**A TRUE COPY**
Sep 21, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information associated with a certain cellular telephone's assigned call number: (414) 803-8344 ("Target Cell Phone"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan way, Parsippany, New Jersey, 07054. | Case No. **23-M-458 (SCD)** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the __Eastern__ District of __Wisconsin__
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before __10-5-23__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Honorable Stephen C. Dries__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ___.

Date and time issued: __9-21-23. 1:20 pm__                    *Stephen C. Dries*
                                                                *Judge's signature*

City and state: __Milwaukee, WI__                    Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                        *Printed name and title*

| **Return** |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **414-803-8344** (referred to in attachment B as "the Accounts"), that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the following dates: September 1, 2023, 12:00 am CST, through September 7, 2023, 11:59 pm CST:

A.   The following information about the customers or subscribers of the Accounts:

   1.   Names (including subscriber names, user names, and screen names);

   2.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   3.   Local and long-distance telephone connection records;

   4.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   5.   Length of service (including start date) and types of service utilized;

   6.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   7.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   8.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

3.  per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 2113(a) and 2113(d) (Armed Robbery of a Financial Institution) and Title 18, United States Code, Section 924(c) (use of a firearm during a crime of violence), involving CAMPBELL, during the period of September 1, 2023, 12:00 am CST, through September 7, 2023, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Sep 21, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with a certain cellular telephone's assigned call number: (414) 803-8344 ("Target Cell Phone"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan way, Parsippany, New Jersey, 07054.

Case No. 23-M-458 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2113(a) & §2113(d) | Armed Robbery of a Financial Institution |
| 18 U.S.C. §924(c) | Use of a Firearm during a Crime of Violence |

The application is based on these facts:
Please see attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Heather Wright, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____TELEPHONE_____ *(specify reliable electronic means)*.

Date: 9-21-23

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF

# AN APPLICATION FOR A SEACH WARRANT

I, Heather N. Wright, being first duly sworn on oath, on information and belief state:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone's assigned call number:

    a. **(414) 803-8344** ("**Target Cell Phone**"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan way, Parsippany, New Jersey, 07054.

2. T-Mobile will be referred to as the "Service Provider." The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I

have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4. Based upon my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

5. To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that VANCE CAMPBELL (DOB XX/XX/1998), hereafter "CAMPBELL," committed two armed robberies of federally insured financial institutions, on September 6, 2023, and September 7, 2023, in violation of Title 18, United States Code, Sections 2113(a) and 2113)(d) (Armed Robbery of a Financial Institution) and Title 18, United States Code, Section 924(c) (use of a firearm during a crime of violence). I further submit that there is probable cause to believe that evidence of CAMPBELL's involvement in the robberies will be recovered in the records that are sought herein.

## II.     PROBABLE CAUSE

8.    On September 6, 2023, the Milwaukee Police department and members of the FBI Milwaukee Area Violent Crimes Task Force ("MAVCTF") responded to the US Bank located at 4015 S. Howell Ave., Milwaukee, Wisconsin, regarding a bank robbery. Upon arrival, members of the MAVCTF spoke with the victim teller, hereinafter referred to as D.D.  D.D. stated that she has been an employee of US Bank for approximately six years. D.D. stated that this was the first time she has been a victim/witness of a bank robbery.

9.    D.D. stated that she was working at teller station #3 for another bank employee who was taking their scheduled lunch break, when she observed a black, male subject enter the bank and approach her teller area. D.D. described the subject as a black male 25-27 years old, approximately 5'10", with a thin build, wearing a red full ski mask with face exposed, and a construction bright yellow vest. D.D. stated that the subject did not initially say anything and passed her a white colored envelope with writing on the outside. D.D. stated that some of the writing was in ink and some of the writing was in marker. D.D. stated that the writing was also in both red and green. D.D. stated that the writing was written poorly and it was difficult to read what was written. D.D. stated that after being passed the envelope, the subject stated, "He got my son."

10.    D.D. stated that she was slightly perplexed at what was happening and eventually stated "Really?" to the subject.  D.D. stated that she took a single $100 bill out of the drawer and passed it to the subject.  D.D. stated that the subject then passed the note closer to her and recalled observing the note stating: "I got a gun, he has my son in the car. Give $2,000-3,000." D.D. stated that after she read the entire note more thoroughly she slowly opened the top teller drawer containing money and began to gradually place several bills of US currency onto the counter for the suspect.  While doing this, she began to look around hoping to get the attention of other bank

employees. D.D. stated that she then tried to covertly and discretely enable the "hold up" alarm but was unable to fully trigger the alarm successfully. D.D. estimated that she had given the subject approximately $400. D.D. stated that towards the end of the encounter with the subject, D.D. observed the subject move his arm and hand to the side of his waistband as if he was concealing a weapon of some sort. D.D. stated that although she did not observe the weapon, based on the subject's movements and physical gestures, she believed that he had a weapon concealed underneath his clothing. D.D. stated that after placing the money onto the teller counter, the suspect picked up the money and neatly stacked it and folded it in half. D.D. stated that the subject walked out of the bank. Following the interview, US Bank managers did a full count of the drawer at teller #3 and communicated with law enforcement that the teller drawer was short $1014.00. The US Bank manager indicated that this was the most accurate number that the subject in this offense obtained.

11. A review of surveillance footage at the US Bank showed that a black four door Acura sedan with no license plate and dark tinted windows, arrived at the bank at approximately 12:46 pm. The suspect vehicle parked and at approximately 12:48 pm, the suspect exited the driver's seat of the vehicle and began walking towards the bank. The suspect was wearing a red balaclava face mask, a dark colored long-sleeved shirt, a neon yellow reflective construction/safety vest, tan pants, and dark shoes. The footage shows the suspect enter the bank through the turnstiles. There was an older male customer at Teller Station #3 and as he walked away, the suspect walked up to the teller window, put his phone down on the counter, opened his wallet, and handed the teller a white piece of paper. The victim can be observed reading the note, and putting some cash onto the counter. The subject appeared to speak to the teller while leaning on the counter with his elbows. The victim then put more cash on top of the note and then slides it back to the suspect.

The suspect then grabs the note and the cash, and turns to walk out of the bank. At approximately 12:50 pm, the suspect is observed quickly walking northwest towards his vehicle, gets into the driver's seat of the vehicle, drives west to the alley, and turned west onto W. Norwich Street.

12. On September 6, 2023, a flock camera near 35th and Wisconsin, at 12:59 pm, captured a similar vehicle with no license plates. The vehicle was believed to be the suspect vehicle based on unique similarities to the suspect vehicle, such as the rear brake lights appeared to be tinted or very dull and the vehicle windows were tinted. There was an Acura emblem on the center of the trunk and no "TL" decal on the rear trunk, and there were not any dealership stickers on the vehicle. This vehicle did not go past any other cameras without a license plate which led investigators to believe the license plate was likely placed back onto the vehicle. Investigators then found a consistent-looking car again, going past the same flock camera at 35th and Wisconsin, at 12:07 pm, this time with WI license plate ASH-3968 affixed to it.

13. A search of law enforcement database checks revealed that a black, Acura TL with WI registration plate ASH-3968, was involved in a traffic stop in Menomonee Falls, WI (Menomonee Falls Police Department ("MFPD") Incident number 23-6220) on July 16, 2023. MFPD identified the driver of the vehicle as VANCE CAMPBELL, dob: XX/XX/1998, and the VIN of the vehicle as VIN: 19UUA66235A081220. The VIN listed to a black 2005 Acura TL 4 door with temporary registration plate N9102F. A photo of CAMPBELL was compared to suspect images of the US Bank robbery suspect and CAMPBELL was deemed as having a consistent body type as the suspect.

14. On September 7, 2023, at approximately 10:32 am, the Oak Creek Police Department ("OCPD") and members of the MAVCTF were notified of a bank robbery at the Landmark Credit Union, located at 8129 S. Howell Avenue in Oak Creek, WI. Upon arrival OCPD

5

spoke with the victim, hereinafter referred to as S.R. S.R. stated that while working Teller Station #1, a male, black subject with a dark complexion, wearing a white painter's mask, a yellow construction type vest, and a hard hat dangling from his belt entered the bank. S.R. described the suspect as having what appeared to be a cross tattoo on his forehead but stated that it looked fake or possibly drawn on with a marker. S.R. stated that the subject stated that he wanted to withdraw $2,000 from checking and $2,000 from savings and handed her a withdrawal slip with the name "Christ Star". The withdrawal slip did not indicate an account number for the money to be withdrawn from. When S.R. asked him for an account number, the suspect then passed S.R. a note stating: "I have a gun"… "will take hostages." The suspect took the note back and then pulled up his sweatshirt, implying to the teller that he had a gun. S.R. provided the subject with $2,000 in $100 bills and $2,000 in $50 bills. S.R. stated that the subject then turned and left the bank out of the main entrance/exit.

15. A review of surveillance footage identified the subject vehicle as an older black Acura with tinted windows and no registration plates. The vehicle parked in front of the Landmark Credit Union in a parking spot facing east. The suspect was then observed exiting the vehicle and entered the bank. The suspect, a black, male, with a thin build and black chin facial hair, was observed wearing black pants with white paint splatter, a black hooded sweatshirt with white writing on the left breast with the hood up and tightened around his face, yellow ear plugs on a string hanging down from his neck, a yellow construction vest, a white painter's mask, and a white hard hat hanging from his belt when he approached the counter. The suspect had a gray cloth glove on his left hand and was observed holding a black cell phone in his right (ungloved) hand. The suspect was observed writing on a slip of paper while holding the phone up to his ear. At approximately 10:27:58, the suspect approached the Teller Station #1 and was observed placing a

piece of paper onto the counter and sliding it towards the victim. The teller is observed looking at the slip of paper and conversing with the suspect. At approximately 10:28:08, the suspect is observed removing a square piece of paper from his wallet and sliding the paper under the glass and at 10:28:15, the suspect takes back the note. At approximately 10:28:19 am on the video surveillance, the suspects pulled open his vest and appeared to briefly lift his sweatshirt with his gloved hand, corroborating the victim's statement that it appeared the suspect was attempting to show that he was armed. Once the transaction took place, the suspect exited the building, entered the driver's seat of the suspect vehicle, and fled the area driving west through the parking lot. In a review of the ATM surveillance camera, it appeared that the subject was by himself and no other people were inside the vehicle.

16. Based upon the physical similarities of the suspect in the US Bank robbery and the Landmark Credit Union robbery, including some similar clothing items, members of the MAVCTF believe the suspect is the same person in both bank robberies. Knowing that robbery suspects often spend their proceeds at the casino, investigators checked the parking structure of the Potowatomi casino for the suspect vehicle, at approximately 1:00 pm CST, and located the suspect vehicle parked on the 4th floor of the structure.

17. On September 7, 2023, at approximately 1:37 pm CST, CAMPBELL was observed exiting the Potowatomi Casino building and was taken into custody while approaching the suspect vehicle. A search of CAMPBELL for officer safety was conducted. CAMPBELL had keys to his vehicle and $4,120.00 in cash on his person. Also, in plain view inside the suspect vehicle, MAVCTF members observed a pair of gray clothed gloves similar to the one worn inside of the bank at the Landmark Credit Union located on the front passenger of the vehicle and a white painter's mask on the rear driver's side seat.

18. On September 8, 2023, OCPD obtained a search warrant for the 2005 Acura TL suspect vehicle. During the search, OCPD located several items of evidence including:

   a. a wallet located in the driver's side door compartment that appeared to be the wallet in the surveillance video of the Landmark Credit Union;

   b. an iPhone located in the driver's side door compartment that appeared to be the phone CAMPBELL was using and then placed on the customer counter at the Landmark Credit Union with a distinct screen protector that appeared to be worn and damaged;

   c. a black marker collected from the rear driver's seat which may have been the marker used to draw the cross on CAMPBELL's forehead;

   d. a white hard hat located in the trunk of the vehicle consistent with the hard hat hanging from the suspect's belt during the Landmark Credit Union robbery;

   e. a yellow, high visibility construction vest located in the trunk of the vehicle similar to the one the suspect was observed wearing in both the US Bank and the Landmark Credit Union robberies;

   f. a white face mask located on the passenger seat of the vehicle similar to the mask work by the suspect in both the US Bank and Landmark Credit Union robberies;

   g. a pair of work gloves on the front passenger seat that appeared to be consistent with the glove worn by the suspect in the Landmark Credit Union robbery;

   h. a loaded Smith & Wesson 9mm handgun with a magazine containing (8) unfired rounds with (1) round in the chamber located in the trunk area near the yellow construction vest;

  i. a piece of a handwritten note, located on the rear passenger seat that appeared to have been ripped; however, a few letters were able to be made out – the letters were "tage" and believed to be part of the note passed to the teller containing the word "hostage";

  j. a pair of ear plugs on a string, located between the driver's seat and center console matching the ear plugs the suspect had hanging from his neck during the Landmark Credit Union robbery.

  19. In addition, when CAMPBELL was arrested, he was wearing a pair of black Under Armor boots that appeared consistent with the shoes the suspect wore during the Landmark Credit Union robbery,

  20. On September 8, 2023, MAVCTF Detective Tony Castro conducted a photo array with D.D., the victim of the US Bank robbery with CAMPBELL as the target of the array. D.D. positively identified CAMPBELL as the suspect who came into the U.S. Bank on September 6, 2023, and robbed the bank.

  21. On September 12, 2023, OCPD obtained a state issued search warrant for CAMPBELL's cell phone and on September 14, 2023, OCPD was able to examine the contents of the phone and determine that the phone number assigned was **414-803-8344 (Target Cell Phone)**. Through an open source database check, T-Mobile was determined to be the service provider for the phone number **414-803-8344**. On September 14, 2023, I submitted a preservation request to T-Mobile for the information being requested in this affidavit.

  22. Your affiant is requesting the subscriber information, call detail records, text message connection records, text message content information, specialized location records, cloud storage records for telephone number, and Timing Advance for the **Target Cell Phone** for the

timeframe of September 1, 2023, beginning at 12:00 am CST, through September 7, 2023, 11:59 pm CST.

## IV.     CELL SITE DATA

23.     In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

24.     Based on my training and experience, I know Service Providers can collect cell-site data about **Target Cell Phone**.  I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phone to which they provide service in their normal course of business in order to use this information for various business-related purposes.

25.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal

course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone** user or users and may assist in the identification of co-conspirators and/or victims.

V.  **AUTHORIZATION REQUEST**

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27. I further request that the Court direct Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **414-803-8344** (referred to in attachment B as "the Accounts"), that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

# ATTACHMENT B

## Particular Things to be Seized

### I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the following dates: September 1, 2023, 12:00 am CST, through September 7, 2023, 11:59 pm CST:

- A.    The following information about the customers or subscribers of the Accounts:

    1. Names (including subscriber names, user names, and screen names);

    2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    3. Local and long-distance telephone connection records;

    4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    5. Length of service (including start date) and types of service utilized;

    6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

3. per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 2113(a) and 2113(d) (Armed Robbery of a Financial Institution) and Title 18, United States Code, Section 924(c) (use of a firearm during a crime of violence), involving CAMPBELL, during the period of September 1, 2023, 12:00 am CST, through September 7, 2023, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.